# UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| TONI BARRONTON, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JEANNE M. LAMBREW, Ph.D, | ) | |
| individually, and in her capacity as | ) | |
| Commissioner, Maine Department of | ) | |
| Health and Human Services, | ) | |
| | ) | |
| CHRISTY DAVIS, individually, and | ) | |
| in her capacity as Program Administrator | ) | |
| Ellsworth location, Department of | ) | |
| Health and Human Services, | ) | |
| | ) | |
| MELISSA WITCOMB, individually, and | ) | DOCKET NO.: 19- |
| in her capacity as Supervisor for the | ) | |
| Department of Health and Human Services, | ) | |
| | ) | |
| LYNN KING, individually, and | ) | |
| in her capacity as licensed clinical | ) | |
| social worker for the Department of | ) | |
| Health and Human Services, | ) | |
| | ) | |
| AARON M. FREY, A.G., individually, | ) | |
| and in  his capacity as Attorney General, | ) | |
| Maine, | ) | |
| | ) | |
| MELODY HAVEY, A.A.G., individually, | ) | |
| and in her capacity as Assistant | ) | |
| Attorney General, Maine, | ) | |
| | ) | |
| PATRICK LYNN, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| NICOLE NORWOOD, | ) | |
| | ) | |
| Defendants | ) | |

**COMPLAINT AND REQUEST FOR INJUNCTION**

NOW COMES the Plaintiff, Toni Barronton, by and through her attornrey's, WILLEY LAW OFFICES, and hereby requests that this Honorable Court grant her a permanent injunction against the Defendants, for violations of her fundamentally protected rights, pursuant to the United States Constitution, Amend XIV, §1, as follows:

## I.      The parties to This Complaint

**A.      The Plaintiff(s)**

1.      The Plaintiff, Toni Barronton, is a resident of 616 Chemo Pond Road, Eddington, Maine 04428.

**B.      The Defendant(s)**

2.      Defendant Jeanne M. Lambrew, Ph.D, Commissioner, Maine Department of Health and Human Services, 221 State Street, 11 State House Station, Augusta, Maine 04333-0011.

3.      Defendant Christy Davis, Program Administrator, Maine Department of Health and Human Services, Ellsworth Office located at 17 Eastward Lane, Ellsworth, Maine 04416.

4.      Defendant Melissa Witcomb is a supervisor, employed with the Department of Health and Human Services, located at 17 Eastward Lane, Ellsworth, Maine 04416.

5.      Defendant Lynn King is a Licensed Clinical Social Worker, employed with the Department of Health and Human Services, located at 17 Eastward Lane, Ellsworth, Maine 04416.

6.      Defendant Aaron M. Frey, Maine Attorney General, is located at 6 State House Station Augusta, Maine 04333.

7.      Defendant Melody Havey, Assistant Attorney General, 84 Harlow St, Bangor, Maine 04401.

8.      Defendant Patrick Lynn is a resident of 19 Bucksport Road, Ellsworth, Maine 04416.

9.      Defendant Nicole Norwood is a resident of 19 Bucksport Road, Ellsworth, Maine 04416.

## II.      <u>Basis for Jurisdiction</u>

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. §1331, a case arising under the United States Constitution or federal laws or treaties is a federal question. Under 28 U.S.C. §1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more the $75,000 is a diversity of citizenship case. In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

The present matter involves a federal question: The State of Maine's interference with the Plaintiff's fundamental right to parent her child free from governmental interference in violation of due process and equal protection of the laws *See* U.S. Const. Amend. XIV, §1.

## A.      Legal Analysis

Due process is a constitutional mandate, however, particularly so in the context of protective custody matters. *See e.g.* U.S. Const. Amend. V and XIV; Maine Const. Art. I, §6; *see also In re Scott S.,* 2001 ME 114, ¶20, FN 12, 775 A.2d 1144 (There can be no question that both the Maine and federal constitutions recognize a fundamental and important right of parents to the care, custody, and control of their children. The interest of parents in the care, custody, and control of their children is perhaps the oldest of the fundamental liberty interests recognized by the United States Supreme Court.). "The Due Process Clause of the Fourteenth Amendment of the United States Constitution, U.S. Const. amend. XIV, and Me. Const. art. I, § 6-A protect a parent's fundamental and important right to raise one's children." *See In re Robert S.*, 2009 ME 18, ¶13,

966 A.2d 894.

"The fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State. Even when blood relationships are strained, parents retain a vital interest in preventing the irretrievable destruction of their family life." *See Santosky v. Kramer*, 455 U.S. 745, 753 (1982). "The Fourteenth Amendment provides that no State shall deprive any person of life, liberty, or property, without due process of law. We have long recognized that the Amendment's Due Process Clause, like its Fifth Amendment counterpart, guarantees more than fair process. The Clause also includes a substantive component that provides heightened protection against government interference with certain fundamental rights and liberty interests." *See Troxel v. Granville*, 530 U.S. 57, 65 (2000) (internal quotation marks and citations omitted).

The *Troxel* Court went on to state that:

The liberty interest at issue in this case -- the interest of parents in the care, custody, and control of their children -- is perhaps the oldest of the fundamental liberty interests recognized by this Court. More than 75 years ago, in *Meyer* v. *Nebraska,* 262 U.S. 390, 399, 401, 67 L. Ed. 1042, 43 S. Ct. 625 (1923), we held that the liberty protected by the Due Process Clause includes the right of parents to establish a home and bring up children and to control the education of their own. Two years later, in *Pierce* v. *Society of Sisters,* 268 U.S. 510, 534-535, 69 L. Ed. 1070, 45 S. Ct. 571 (1925), we again held that the liberty of parents and guardians includes the right to direct the upbringing and education of children under their control. We explained in *Pierce* that the child is not the mere creature of the State; those who nurture him and direct his destiny have the right, coupled with the high duty, to recognize and prepare him for additional obligations. 268 U.S. at 535. We returned to the subject in *Prince* v. *Massachusetts,* 321 U.S. 158, 88 L. Ed. 645, 64 S. Ct. 438 (1944), and again confirmed that there is a constitutional dimension to the right of parents to direct the upbringing of their children. It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder.

*Id.* at 65-66. The Court also stated that:

> In subsequent cases also, we have recognized the fundamental right of parents to make decisions concerning the care, custody, and control of their children. See, *e.g.*, *Stanley* v. *Illinois,* 405 U.S. 645, 651, 31 L. Ed. 2d 551, 92 S. Ct. 1208 (1972) ("It is plain that the interest of a parent in the companionship, care, custody, and management of his or her children 'comes to this Court with a momentum for respect lacking when appeal is made to liberties which derive merely from shifting economic arrangements'" (citation omitted)); *Wisconsin* v. *Yoder,* 406 U.S. 205, 232, 32 L. Ed. 2d 15, 92 S. Ct. 1526 (1972) ("The history and culture of Western civilization reflect a strong tradition of parental concern for the nurture and upbringing of their children. This primary role of the parents in the upbringing of their children is now established beyond debate as an enduring American tradition"); *Quilloin* v. *Walcott,* 434 U.S. 246, 255, 54 L. Ed. 2d 511, 98 S. Ct. 549 (1978) ("We have recognized on numerous occasions that *HN6* the relationship between parent and child is constitutionally protected"); *Parham* v. *J. R.,* 442 U.S. 584, 602, 61 L. Ed. 2d 101, 99 S. Ct. 2493 (1979) ("Our jurisprudence historically has reflected Western civilization concepts of the family as a unit with broad parental authority over minor children. Our cases have consistently followed that course"); *Santosky* v. *Kramer,* 455 U.S. 745, 753, 71 L. Ed. 2d 599, 102 S. Ct. 1388 (1982) (discussing "the fundamental liberty interest of natural parents in the care, custody, and management of their child"); *Glucksberg*, *supra*, at 720 ("In a long line of cases, we have held that, in addition to the specific freedoms protected by the Bill of Rights, the 'liberty' specially protected by the Due Process Clause includes the right . . . to direct the education and upbringing of one's children" (citing *Meyer* and *Pierce*)). In light of this extensive precedent, it cannot now be doubted that the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children.

*Id.* at 66.

Furthermore, "fundamental fairness" is an absolute guarantee of due process, as noted by the U.S. Court of Appeals for the First Circuit, amongst others, when it stated that:

> The Due Process Clause of the Constitution prohibits deprivations of life, liberty, or property without "fundamental fairness" through governmental conduct that offends the community's sense of justice, decency and fair play . . . The test for determining whether state action violates the Due Process Clause . . . requires a court to consider: (1) the private interest that will be affected by the government's action; (2) the risk of an erroneous deprivation of such interest through the existing procedure and the probable utility of additional or substitute procedural safeguards; and (3) the government's interest in adhering to the existing procedure, including fiscal and administrative burdens that additional procedures might entail.

*Roberts v. Maine*, 48 F. 3d 1287, 1291-1292 (1st Cir. 1995); *see also State v. Stade*, 683 A.2d 164, 166 (Me. 1996); *In re Chelsea C.*, 2005 ME 105, ¶ 12, 884 A.2d 97; *State v. Cormier*, 2016 Me. Super. LEXIS 260, *11.

"The Due Process Clause . . . prohibits deprivations of life, liberty, or property without fundamental fairness through governmental conduct that offends the community's sense of justice, decency and fair play." *State v. Hunt*, 2016 ME 172, ¶ 19, 151 A.3d 911. "The terms 'due process of law' and 'law of the land' as constitutional terms, are of equivalent import, and interchangeable. Due process of law is another name for governmental fair play. Notice and opportunity for hearing are of the essence of due process of law." *In re Stanley*, 133 Me. 91, 95, 174 A. 93, 95 (1934) (internal quotation marks altered; internal citations omitted). "Due process of law is another name for governmental fair play." *State v. Le Blanc*, 290 A.2d 193, 197 (Me. 1972). And "governmental fair play, imbedded in constitutional substantive due process, requires that . . ." [the The Plaintiff should have been put on notice of why the Department of Health and Human Services intervened and refused to place her child in her custody, and instead was placed with a non-family individual. *Auburn v. Mandarelli*, 320 A.2d 22, 31 (Me. 1974).

"[T]he test is always whether or not there has been under *all* the circumstances a violation of 'fundamental fairness' or what we ourselves have sometimes termed 'governmental fair play.'" *Michaud v. State*, 161 Me. 517, 531, 215 A.2d 87, 94 (1965) (internal quotation marks altered). *See also State v. Farnsworth*, 447 A.2d 1216, 1219 (Me. 1982) ("This Court has recognized the possibility that certain kinds of governmental misconduct may be asserted in defense to prosecution. *See State v. Copeland*, Me., 391 A.2d 836 (1978). In *Copeland*, the issue was whether

the police had unfairly interfered with the defendant's ability to obtain evidence of his innocence, thereby violating his due-process rights.").

"It has been suggested that when the state, through DHS, actively hinders the mother's attempts to see the children or improve the home environment so that the children may return home, there may be a denial of the mother's due process rights." *In re Nathan W.*, 1985 Me. Super. LEXIS 355, *7. In this case, DHHS is refusing to let the Plaintiff have her child when there is no court order allowing it to do so. *See id.*

"[The] concern for due process is no less so with regard to a loss of a liberty interest." *State v. Cormier*, 2016 Me. Super. LEXIS 260, *11; *see also In re Scott S.*, 2001 ME 114, ¶20, FN 12, 775 A.2d 1144. "[The Court must] examine . . . the totality of the circumstances under which the [Department has intervened and taken the Plaintiff's child from her, in order to evaluate whether it was] ***fundamentally unfair***." *State v. Hunt*, 2016 ME 172, ¶ 19, 151 A.3d 911 (bolding and emphasis added).

Furthermore,

The Fourteenth Amendment to the Constitution is not confined to the protection of citizens. It says: "Nor shall any State deprive any person of life, liberty, or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." These provisions are universal in their application, to all persons within the territorial jurisdiction, without regard to any differences of race, of color, or of nationality; and the equal protection of the laws is a pledge of the protection of equal laws.

*Yick Wo v. Hopkins*, 118 U.S. 356, 369 (1886). "[T]he fundamental rights to life, liberty, and the pursuit of happiness, considered as individual possessions, are secured by those maxims of constitutional law which are the monuments showing the victorious progress of the race in securing to men the blessings of civilization under the reign of just and equal laws[.]" *Id.* at 370

### III.   <u>Statement of Claim</u>

Approximately a month and a half ago, the Plaintiff's ex, Patrick Lynn, was with another woman who he has an infant child with. On information, they left their infant child in a locked vehicle. It is Plaintiff's understanding that they were inside of a building either obtaining and, or using drugs. They were arrested and when the vehicle was searched, there was a significant number of hypodermic needles in the vehicle where the infant was located, including at least one in the diaper bag.

The caseworker, Lynn King, came to visit my home and met with me. I was told that my child would be placed with me and my other daughter who I am raising on my own, as a single mother. However, I was later contacted by Lynn and told that her supervisor, Melissa Witcomb, had determined that my child would not be placed with me, but would, instead, be placed with Nicole Norwood, Patrick's current girlfriend with whom he also has two children. Nicole has no biological connection to my child.

The "rationale" of DHHS was that Patrick, through an Order, dated March 8, 2016, was awarded "sole parental rights and responsibilities," and therefore, I have no rights to my child. This is completely incorrect; my rights were never terminated. *See* Plaintiff's Complaint Exhibit A, attached hereto (BANDC-FM-2016-146 Final Order of Parental Rights and Responsibilities).

Patrick and I both had a prior protective custody matter against us in the Bangor District Court, for substance use/abuse issues. That matter was resolved on March 8, 2016, when the protective custody matter was dismissed and was transferred into a family matter. *See* Plaintiff's Exhibit A. I was not completely stable at the time, and so I defaulted and was not present at the final hearing. As a result, Patrick was awarded "sole parental rights and responsibilities" with the exception of my "rights of contact and access to records." Importantly, the Order does not define

what the statutory definition of sole parental rights and responsibilities is. And, as mentioned, at no time has the mother lost any of her constitutionally protected rights over her child.

Since March 8, 2016, the Plaintiff has been regularly seeing her child, seeing her on average, on a rotating weekend basis. However, Patrick has used the Plaintiff's time with her child as a tool over both the Plaintiff and the child. For example, he will withhold contact as a punishment for the child when she would misbehave. Also, Plaintiff has been regularly paying child support as she was ordered to do so.

Plaintiff has maintained full time work where she helps adults with disabilities. Further, the Plaintiff has a stable home which is located next to her family and is in a country setting which is safe and stable for the upbringing of children. Notably, the Plaintiff has one child living with her on a full-time basis. Plaintiff also has a significant support system of family and friends, as well as a large recovery network that she regularly utilizes to her benefit. Plaintiff presents a very safe, stable and nurturing environment by which to raise both of her children.

On information, the DHHS caseworker and supervisor have stated that Plaintiff has no rights to her child. Further, they have stated that Patrick has stated that the minor child is to reside with his girlfriend, Nicole, even though he currently has lost custody of his child that was left in the vehicle and also, on information, cannot have any contact with any of his other children, including the two that he has with Nicole. Nevertheless, even though Nicole doesn't have any biological connection to the child, DHHS has placed the child with her.

Over the course of the past month (maybe month and a half), the Plaintiff has had no contact with her child because Nicole is refusing to allow any. Plaintiff has not even been allowed to talk to her child. These are restrictions and prohibitions that Nicole are placing on the Plaintiff (with the aid and support of DHHS) even though Nicole is not the child's parent and has no rights and

responsibilities to the child.

Plaintiff's counsel, the undersigned, attempted to speak to the caseworker, her supervisor, as well as Christy Davis, the head of the Ellsworth DHHS Office, to resolve the issue; no one returned any of the calls placed this past Friday, May 10, 2019 or Monday, May 13, 2019. Plaintiff's counsel did speak with the Assistant Attorney General who works with that particular office, Melody Havey, on Monday, May 13, 2019, who confirmed that DHHS would not allow the child to be placed with the Plaintiff as they believe that the Plaintiff has "no rights to her child." Further, AAG Havey claimed that at some point the Plaintiff tried to obtain a PFA on behalf of her child and was denied by a Maine District Court Judge on the basis that the Plaintiff has "no rights to her child." The undersigned has no confirmation of this statement, however, even if true, that would be a misstatement of the law by the Judge and has no bearing on this matter; in fact, that statement makes the situation all the more urgent.

## IV.  Irreparable Injury

This is not a case that presents a claim that can be remedied by monetary damages. First and foremost, DHHS caseworkers are shrouded by immunity from suit when they are working in their professional capacities.[1] But, more importantly, the Plaintiff is being denied any and all contact with her minor child. There is no amount of money that can remedy this issue as the right of the Plaintiff to have contact with her child is fundamental. *See Troxel*, 530 U.S. at 65-66.

Currently, it has been approximately a month, to a month and a half, that the Plaintiff has not been allowed to see her child by any of the Defendants. This is being done at the express consent and direction of the Maine Department of Health and Human Services and the Maine

---

[1] The Plaintiff does not concede this fact in this particular case because she believes that the facts of this case may have taken the caseworker's outside the scope of their employment; this is *not* an issue being raised through this Complaint for an Injunction and the Plaintiff is preserving it for a later date and time.

Attorney General's Office.

The time being missed between the Plaintiff and her child is irreplaceable and requires immediate attention by this Court.

## V.      Relief

The Plaintiff is requesting that this Honorable Court prohibit the Maine Department of Health and Human Services, as well as the Maine Attorney General's Office, and also the other named Defendants from interfering with her fundamental liberty interest to parent her child free of governmental interference and to further place the child with her pending all further litigation regarding this issue, whether in Federal or State Court. The Plaintiff currently has a pending Motion to Modify the March 8, 2016, PRR Order. Further, the Plaintiff would request an order prohibiting any contact between Nicole Norwood and the minor child on the basis that Nicole is deliberately interfering with the Plaintiff's right to have contact with her child. The Plaintiff would also request all attorney's fees, costs and expenses incurred through this pending litigation.

## VI.      Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a   reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

WHEREFORE, the Plaintiff requests that this Honorable Court grant her the requested relief of a permanent injunction, and award her attorney's fees, costs and expenses.

Dated at Bangor, Maine
May 13, 2019

_____/s/ Ezra A. R. Willey, Esq._____
Ezra A. R. Willey, Esq. (#5025)
Attorney for Plaintiff
WILLEY LAW OFFICES
15 Columbia St., Ste. 501
P. O. Box 924
Bangor, ME 04402-0924
(207) 262-6222
ezra@willeylawoffices.com